COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Russell and Senior Judge Frank

VANESSA EARLS

v.     Record No. 1199-15-1

VIRGINIA BEACH DEPARTMENT
  OF HUMAN SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
FEBRUARY 9, 2016

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
R. Bruce Long, Judge Designate

(Janeé D. Joslin, on brief), for appellant.

(Mark D. Stiles, City Attorney; Christopher S. Boynton, Deputy City
Attorney; Elena E. Ilardi, Associate City Attorney; Carla F. Kithcart,
Guardian *ad litem* for the minor child, on brief), for appellee.

Vanessa Earls (mother) appeals an order terminating her parental rights to her child, Z., age

eight. Mother argues that the trial court erred by terminating her parental rights because clear and

convincing evidence did not prove that (1) the termination was in the child's best interests and

(2) mother was unwilling or unable to substantially remedy the conditions that led to the child's

foster care placement. Upon reviewing the record and briefs of the parties, we conclude that this

appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See

Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

When mother was sixteen years old, she was in foster care in California and gave birth to her first child, A. When mother was seventeen years old, she gave birth to her second child, Z., who is the subject of this appeal.[1] Mother and the children moved in with Z.'s father and his mother, Leslie Davis. Davis lived in California. Mother enlisted in the United States Navy and left A. and Z. in Davis' care because mother was stationed in Norfolk, Virginia. Due to safety concerns regarding the children in Davis' care, mother was discharged from the Navy. Despite those concerns, mother stayed in Virginia for two or three extra months after being discharged and before going back to California. When mother returned to California, she and the children lived with Davis for several months before they were evicted. Then, mother lived with the children in several shelters. In January 2011, mother decided to move back to Virginia. She again left A. and Z. with Davis in California. However, Davis became unable to care for the girls, so mother's father started caring for the girls. Mother's father also lived in California. A couple of months after he started taking care of the children, mother's father contacted child protective services because A. said that she had been sexually molested by mother's former boyfriend. On July 1, 2011, the children were placed in foster care in California. Mother returned to California to obtain custody of her children. On November 21, 2011, the California court granted mother custody of her children.

Mother and the children moved to Virginia Beach and lived in a motel. On December 29, 2011, the Virginia Beach Child Protective Services received a call alleging inadequate supervision of the children. The police investigated and found the children alone in a motel room. A police officer waited over an hour for mother to return. Mother agreed to a plan where the children would reside with one of her friends, who would supervise contact between mother and the children. However, on January 4, 2012, the friend informed the Virginia Beach

[1] A. and Z. have different fathers.

Department of Human Services (the Department) that she could no longer care for the children. The children stated that mother had not complied with the safety plan because her friend was not consistently supervising her contact. The Department placed the children in foster care on January 4, 2012.

Initially, mother completed several of the services recommended by the Department. She tested negative for illegal drugs. She completed a Clean and Healthy Homes Workshop on June 13, 2012. She completed a Budget Workshop on June 14, 2012. She was employed full-time at Big Lots as a shelf stocker. She completed a Parenting Capacity Evaluation, and based on the recommendations of the evaluator, the Department wanted mother to participate in weekly counseling, parenting classes, and in-home counseling with the girls. In late August 2012, mother changed jobs and started working at a Waffle House. On September 19, 2012, mother completed the Child and Safety Workshop. On November 20, 2012, mother started weekly individual counseling with Serena Romero. Mother had two unsupervised overnight weekend visits on December 7, 2012 and December 14, 2012.

The parties appeared before the Virginia Beach Juvenile and Domestic Relations District Court (the JDR court) on December 18, 2012. The JDR court approved the Department's plan for a trial home placement with mother. On December 21, 2012, the Department placed the girls in mother's home, but removed the children from her home on January 8, 2013 when the children said that they were left alone to get ready and walk to school in the morning.

On July 25, 2013, the parties appeared before the JDR court. Mother was still working at the Waffle House and was renting a room from a friend.

In September 2013, mother started working at McDonalds. At the next hearing in November 2013, mother told the JDR court that her support system was in California and she wished to relocate there with her children. The JDR court acknowledged that mother had made

progress and instructed the Department to investigate options for mother if she and the children moved to California.

At the following hearing in January 2014, mother admitted that she had been hospitalized for mental health reasons since the last hearing. She told the JDR court that she quit her job at McDonalds and was struggling to find housing and employment. She denied being pregnant, but on April 12, 2014, mother gave birth to her third daughter, F.

On April 28, 2014, the JDR court held the fourth permanency planning hearing and termination of parental rights hearing. Mother testified that she had housing, but did not have a job. She was not in individual counseling. After hearing the evidence and argument, the JDR court terminated mother's parental rights to A. and Z. Mother appealed to the circuit court.

On July 30, 2014, the parties appeared before the circuit court.[2] After the JDR court hearing, mother changed her living situation because she and F.'s father rented rooms from a church member. Mother was supposed to pay half of the rent, but was struggling to do so. Mother testified that she was working at Kim's Cleaning and at Wendy's. The lady from whom mother rented the rooms transported mother to her jobs and watched F. for her. Mother had started counseling with a different counselor and started anger management classes. After hearing the evidence and argument, the circuit court continued the case and ordered mother to comply with the Department.

On October 27, 2014, the parties appeared before the circuit court again. Mother had maintained her housing and individual counseling. She completed a psychiatric evaluation and was still in anger management classes. Mother was no longer working at Kim's Cleaning, but was still employed at Wendy's. Mother continued to receive support from the church members.

_____
[2] The Department withdrew its petition to terminate mother's parental rights to A. because the Department recently found A.'s father, who requested custody of A. Therefore, the children's cases proceeded separately.

The court found that she had made "significant progress;" however, it was concerned about Z. and her stability. The circuit court continued the case to allow mother a chance to show continued progress.

On March 31, 2015, mother left the residence where she had been living, so she no longer had the assistance of the church member. She refused to tell the Department or the guardian *ad litem* where she was living.

From December 2014 until May 7, 2015, mother did not attend counseling. Mother also had verbal altercations with managers at Wendy's and left her job. She started working for a temporary staffing agency, but did not have steady employment there.

On June 10, 2015, the parties appeared before the circuit court. Mother again asked for additional time because she was not yet prepared to take Z. At that time, Z. had been in foster care for forty-two months. Z.'s therapist stated that the child needed stability and needed to know where she was going to live. The circuit court found that mother failed to remedy the conditions that required Z.'s foster care placement and that it was in Z.'s best interests to terminate mother's parental rights. This appeal followed.

ANALYSIS

Mother argues that the termination of her parental rights to Z. was not in the child's best interests, especially since mother had substantially remedied the situation that led to Z. being placed in and remaining in foster care.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount

- 5 -

consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Mother argues that she completed most of the Department's required services. She had maintained employment for several months at a time and went to counseling. She acknowledges that she had not been able to find an affordable and suitable three-bedroom apartment or home, but mother asserts she was financially unable to secure long-term housing.[3] She contends the Department did not provide her with the appropriate amount of assistance.

However, the record indicates that the Department provided mother with numerous services, including the Clean and Healthy Homes Workshop, Budget Workshop, Child and Safety Workshop, parenting classes, counseling, anger management classes, parenting capacity evaluation, and supervised visitation. The Department investigated several relatives and friends as possible placements for the children. It allowed the children to return to mother's care in December 2012, but had to remove the children shortly thereafter because mother left the children alone to fend for themselves in the morning while she went to work. Such behavior was what led to the children being removed in 2011. Then, the Department tried to help her return to California with the children, but she was uncooperative. She denied that she was pregnant and

---

[3] The counselors had said that A. and Z. needed separate bedrooms, so a three-bedroom house or apartment was necessary.

refused to sign releases. In 2013, she was hospitalized for mental health reasons. In 2014, she obtained housing through a church member, who also helped her with transportation and child care. Mother, however, left this situation in 2015, and refused to tell the Department where she was living. She did not ask for assistance with housing.

Mother did not trust the Department and refused to provide information and cooperate with the social workers. "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

The child had been in foster care for forty-two months at the time of the circuit court hearing. Her counselor told the court that Z. needed stability and permanency. Mother admitted that she was not in a position to take care of Z. at the time of the final hearing and requested additional time. The circuit court concluded that it was not in Z.'s best interests to wait and see if mother was able to obtain and maintain a stable household.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the record, the trial court did not err in terminating mother's parental rights to Z. pursuant to Code § 16.1-283(C)(2).

## CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.